**Ronald HUGHES, Plaintiff,**

v.

**JIM WALTER RESOURCES, INC., Defendant.**

**No. CV-81-P-0016-S.**

United States District Court, N. D. Alabama, S. D.

Aug. 19, 1981.

C. Michael Quinn, Birmingham, Ala., for plaintiff.

James P. Alexander, James Walker May, Bradley, Arant, Rose & White, Birmingham, Ala., for defendant.

## MEMORANDUM OF OPINION

POINTER, Chief Judge.

Before the court is the plaintiff's request that this Title VII case be maintained as a class action. This request, which is opposed by the defendant, is to be decided on the basis of a joint stipulation of facts. Upon consideration of the facts and applicable law, the court concludes that the requirements of F.R.Civ.P. Rule 23 are satisfied and that the cause should be certified as a class action.

In 1978 and 1979 Hughes applied for employment as a miner at the defendant's two Graysville mines. On April 7, 1980, he filed a charge with the EEOC, asserting that he had been bypassed for employment because of his race. On January 6, 1981, after receiving the prescribed notice from the EEOC of his right to sue, he instituted this action on behalf of all blacks who had unsuccessfully sought employment as miners at the defendant's mines.

Plaintiff seeks to represent not only those blacks who applied for positions at the two Graysville mines, but also those who applied for jobs at four other mines operated by the defendant, generally referred to as the "Brookwood" mines. The two groups of mines are, however, approximately 60 miles apart and processing of applications for the two groups is handled through separate offices and personnel. While many of the standards and procedures are the same at both groups, some, like the criterion for determining whether an applicant is "experienced", differ. Bargaining unit employees at each of the six mines are represented by a separate local union; and seniority rights are provided only with respect to the operations at the particular mine where the miner is employed. Hughes applied for employment only at the Graysville mines, nor was he ever considered for employment at the Brookwood mines. The EEOC's investigation of Hughes' charge was limited to hiring activities at the Graysville mines.

From these facts it is clear that Hughes cannot, consistent with the requirements of Rule 23(a)(3) and (4), represent a class including unsuccessful applicants for positions at the Brookwood mines. Certification of a class, if it is to be ordered, must rather be determined on the basis of the relevant facts concerning hiring practices at the Graysville mines.

According to the stipulated facts, in the period from October 10, 1979—180 days prior to the filing of Hughes' EEOC charge— to June 30, 1981, 22 of the 197 black applicants for Graysville miner positions were hired, while 102 of the 745 white applicants were hired. Under a system of random selection among these applicants, the projection is that 26 blacks would have been hired—only four more than actually hired. Had the applicant pool been expanded to include those who had applied in the year preceding October 10, 1979—since applications were considered as remaining active for one year—still the projection is that only 28 blacks would have been hired, or only six more than actually hired.

The defendant argues from these statistics that only four or six blacks have arguably been denied employment because of their race and accordingly that the requirements of Rule 23(a)(1) are not satisfied. This argument somewhat disingenuously confuses the role of statistical data as evidence affecting the merits of a claim with the role of such data under Rule 23.

It is certainly true that the referenced employment figures will be of little support to a claim, whether for an individual or for a class, of discrimination in hiring. The selection of four fewer blacks than what would have been projected based on the percentage of black applicants represents less than one standard deviation from statistical expectations, and indeed can be anticipated almost 90% of the times a random selection was made from such a pool—a far cry from the 5% standard typically used in such studies. Similarly, the fact that the percentage of black miners at the Graysville mines during the years in question exceeded somewhat the percentage of blacks in the Birmingham SMSA population and was only slightly below the percentage of blacks in the craft workers, operatives and laborers classification in the SMSA will hardly aid the plaintiff in attempting to establish discrimination.

It may well be, however, that the plaintiff can adduce at trial other evidence to support a claim of discrimination. Just what that evidence might be, and just what its effect on the issues might be, are matters of conjecture, inappropriate for consideration at this time. What is clear is that the statistical evidence does not ipso facto preclude a finding of discrimination against the class which the plaintiff seeks to represent and does not limit the number of class members against whom discrimination might be established through other persuasive evidence. Moreover, even if it were obvious that the claims made on behalf of a class were probably without merit, such a fact would not stand in the way of a class certification, which could provide a judicial determination of such lack of merit. As the court should not refuse to recognize a class on the basis of the merits reflected at a "mini-hearing" under Rule 23, so also it would be inappropriate to deny certification under Rule 23(a)(1) on the basis of the few class members who might ultimately prevail on their claims.[1]

The stipulation indicates that, in making its hiring decisions, the defendant has divided the applicants into two groups—those who were "experienced miners" consistent with the definition contained in 30 C.F.R.

---

1. A much closer question would be presented in circumstances where, although the number of applicants was large, the number of persons hired was quite small, such as less than ten. The argument would be that the number of putative class members who might have been selected even if all persons hired were black would be insufficient under Rule 23(a)(1).

That situation is not, however, presented in the present case and need not here be resolved. *Cf. Payne v. Travenol Laboratories, Inc.*, 565 F.2d 895, 899 (5th Cir. 1978) ("The proper focus when determining [the merits of a claim of] disparate impact of an employment condition is on those excluded by the requirement, not on the number of positions to be filled ....")

Section 48.2(b), and those who were not. According to the stipulation, the defendant incurs additional training costs for "inexperienced" miners of at least $700.00 per miner. Not surprisingly, the statistics reflect that the hiring rate for "experienced" miners is almost four times greater than that for "inexperienced" applicants.

■ The defendant contends that Hughes, an "inexperienced" applicant, should at most only be allowed to represent other such applicants and should not be allowed to represent those "experienced" black applicants who were unsuccessful. Cited as support for this proposition is *Payne v. Travenol Laboratories, Inc.*, 565 F.2d 895 (5th Cir. 1978). One may reasonably assume that the defendant's motivation stems not only from a desire to limit the size of the putative class, but also from the more favorable inferences to be drawn from employment statistics concerning treatment of "inexperienced" applicants.[2] The parties' motivations, laudable or otherwise, with respect to class certification should not, however, affect the court's decision as to the application of Rule 23.

In *Travenol Laboratories*, the court held that the named plaintiffs, all of whom possessed at least a tenth grade education, lacked standing to present a class claim attacking that educational requirement for certain positions. Contrary to the defendant's contention, the appropriate analogy to the present case would not be to prevent Hughes from attacking a preference based on mining experience, but rather to prevent an "experienced" black applicant from challenging that practice. The distinction can be seen by noting other portions of the opinion in *Travenol Laboratories*, where the named plaintiffs were permitted to attack for themselves and other blacks requirements for a twelfth grade education or college degree for other jobs which they did not possess. The class attack on these higher level educational requirements was permitted even though there would have been some class members who met those requirements and were, in a sense, thereby favored by those requirements.[3]

In summary, the court concludes that applicants for positions at the Brookwood mines should be excluded from the class, that the number of class members is sufficiently numerous under Rule 23(a)(1) notwithstanding the fact that the statistical evidence thus far presented does not give rise to any inference of discrimination against the class, and that the plaintiff, Hughes, may represent "experienced" as well as "inexperienced" black applicants. There is no dispute but that the remaining requirements of Rule 23(a) and (b)(2) are satisfied, and accordingly the court by separate order appropriately defining the class will certify the case for class action treatment. Whether any violation of Title VII on behalf of the class will be established appears doubtful at this stage, but that is a matter for further development and trial.

## ORDER

In accordance with the Memorandum of Opinion filed herewith, it is ORDERED under Rule 23(c)(1), F.R.Civ.P., that this action be maintained by Ronald Hughes, as plaintiff, on behalf of a class consisting of all black persons who have had applications pending subsequent to October 9, 1979, for employment as miners at the Bessie or Flat Top/Nebo mines of Jim Walter Resources, Inc. (or who may hereafter make applications for such positions), with respect to any claim of a denial of employment because of their race.

2. According to the data presented, 13 of the 136 "inexperienced" black applicants were hired, as compared to 20 of the 414 "inexperienced" white applicants. Rather than indicating discrimination against blacks, such information would give rise to the statistical inference, significant at the .05 level, of discrimination against whites.

3. A reading of the district court opinion in *Travenol Laboratories*, 416 F.Supp. 248 (N.D. Miss.1976), indicates that one of the three named class representatives met the twelfth grade requirement, which the other two were attacking on behalf of the class.